

# THE ATTORNEY GENERAL

# OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

July 18, 1952

Hon. Sam W. Davis
District Attorney
Civil Courts Building
Houston 2, Texas

Opinion No. V-1484

Re: Several questions relat-
ing to the duties of the
district clerk and the
district attorney under
the Uniform Reciprocal
Enforcement of Support
Act.

Dear Sir:

Your request for an opinion of this office re-
lates to the official duties of the district clerk and
district attorney under the Uniform Reciprocal Enforce-
ment of Support Act (Arts. 2328b-1 to 2328b-3, V.C.S.).

The questions presented by you for determina-
tion are:

"1. Did the Legislature intend that the
district clerks of their courts should perform
the same duties in these cases originating
out of the State without requiring deposits or
security for costs?

"2. Did the Legislature, by the use of
the phrase 'notify the district or county attor-
ney' intend that it be the mandatory duty of
these officials to prosecute or try these ac-
tions when received from the initiating states?"

The Uniform Reciprocal Enforcement of Support
Act was enacted into law by House Bill 192, Acts 52nd
Leg., R.S. 1951, ch. 377, p. 643, and is codified as Ar-
ticles 2328b-1 to 2328b-3, V.C.S. Its purpose, as stated
in Section 1, is to improve and extend by reciprocal leg-
islation the enforcement of duties of support and to make
uniform the law with respect thereto.

There is no provision in the Uniform Act relat-
ing to the payment of costs, nor is there a provision ex-
pressly authorizing the district clerk to require a de-
posit or other security for costs.

Article 3927, V.C.S., provides that the district clerk shall receive certain fees for services performed "in civil cases," and various other statutes set out fees and expenses which are taxable as costs in civil cases. The general provisions with respect to requiring the plaintiff in a civil action to give security for costs are contained in the following rules of the Texas Rules of Civil Procedure:

"Rule 142. Security for Cost.--The clerk may require from the plaintiff security for costs before issuing any process, but shall file the petition and enter the same on the docket. No attorney or other officer of the court shall be surety in any cause pending in the court, except under special leave of court."

"Rule 143. Rule for Costs.--The plaintiff may be ruled to give security for costs at any time before final judgment, upon motion of the defendant or any officer of the court interested in the costs accruing in such suit, and, if such rule be entered against the plaintiff and he fail to comply therewith on or before twenty (20) days after knowledge or notice that such rule has been entered, the suit shall be dismissed."

"Rule 146. Deposit for Costs.--In lieu of a bond for costs, the party required to give the same may deposit with the clerk of court or the justice of the peace such sum as the court or justice from time to time may designate as sufficient to pay the accrued costs."

Under Rule 145, the clerk may not require security where the party furnishes satisfactory proof of his inability to give security. Also, certain classes of parties are specifically exempted by statute from giving security. See Arts. 118d (Sec. 6), 279a, 2072, 2072a, 7880-126a, V.C.S. Even though a party is exempted from giving security, costs are nevertheless assessable and the exemption does not relieve the party from the legal obligation to pay costs. Roby v. Hawthorne, 84 S.W. 2d 1108 (Tex. Civ. App. 1935, error dism.).

From the foregoing, we think it may be stated as a general rule that the plaintiff in a civil action may be required to give security for costs unless he is expressly exempted from this requirement, and costs are assessable in all civil actions unless an applicable statute expressly provides otherwise.

In Att'y Gen. Op. V-1409 (1952), this office held that a proceeding under Article 2328b-3 is a civil action. Proceedings in the district courts of Texas when acting as the responding State are instituted by the filing of a certified copy of a petition, the party instituting the proceeding is called the plaintiff, and the party against whom it is instituted is called the defendant. This terminology indicates to us that the Legislature considered actions of this kind to be of the same general nature as other civil actions.

Since the Uniform Reciprocal Enforcement of Support Act does not contain a provision excepting these civil actions from the general rules relating to costs and security therefor, we agree with your conclusion that the district clerk may require the plaintiff to give security for costs in a suit filed under this act.

In your second question you ask whether the Legislature intended that it be the duty of the district or county attorney to try these actions when Texas is the responding State. Section 12 of House Bill 192, which comes under Part III entitled "Civil Enforcement," reads:

"When a court of this State, acting as a responding state, receives from the court of an initiating state the aforesaid copies, it shall (1) docket the cause, (2) notify the District or County Attorney, (3) set a time and place for a hearing, and (4) take such action as is necessary in accordance with the laws of this State to obtain jurisdiction."

This office held in Att'y Gen. Op. V-1409, supra, after reviewing the history of the statute, that the Legislature intended to charge the district or county attorney with the duty of representing the obligee in the Texas court. You have suggested in the brief accompanying your request that such a construction would render this provision of the statute unconstitutional, for two reasons: (1) it would be violative of Sections 50, 51, and 52 of Article III, Constitution of Texas, which prohibit the granting of public money to an individual; (2) this subject matter is

not embraced in the title of the act, and the provision is therefore void under Section 35 of Article III of the Constitution.

With reference to the first constitutional objection, the argument is advanced that the Constitution prohibits public officials who receive their pay from the State or any political subdivision thereof, when acting in their official capacities, from giving personal aid to an individual. But these constitutional provisions do not prohibit the expenditure of public money for a public purpose within the State's governmental powers, even though a class of individuals may derive some benefit therefrom. Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79 (1940); Seydler v. Border, 115 S.W.2d 702 (Tex. Civ. App. 1938, error ref.). This objection was answered in Opinion V-1409, wherein it was stated:

> "Since the enforcement of the duty of support is a matter of public as well as private concern, and since the officers of this State will be performing services only in instances in which reciprocal services will be accorded to this State, we are unable to say that the expenditure of public funds in compensating these officers and their assistants for the services would not be for a public purpose."

Section 35 of Article III, Constitution of Texas, reads:

> "No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

In considering whether the title of a legislative act gives sufficient notice of its contents to comply with this constitutional provision, several well-established rules must be kept in mind. In the first place, the provision should be construed "liberally, rather than to embarrass legislation by a construction whose strictness is

unnecessary to the accomplishment of the beneficial purposes for which it was adopted." Austin v. Gulf, C. & S.F. Ry., 45 Tex. 234, 267 (1876); Consolidated Underwriters v. Kirby Lumber Co., 267 S.W. 703 (Tex. Comm. App. 1924). The underlying purpose of the provision is "to prevent embracing in an act, having one ostensible object, provisions having no relevancy to that object." Hamilton v. St. Louis, S.F. & T. Ry., 115 Tex. 455, 283 S.W. 475 (1926). In the Consolidated Underwriters case the court said:

"It is well recognized that the purposes of this provision are to advise the Legislature and the people of the nature of each particular bill, so as to prevent the insertion of obnoxious clauses which otherwise might be ingrafted on it and become the law, and to obviate legislation through the combination, upon a composite bill, of the votes of the proponents of different measures included in it, some of which would not pass upon their merits if separately considered."

Another rule, equally well established, is that the title need not recite all the details of the act. Murray v. Reagan, 129 Tex. 206, 102 S.W.2d 202 (1937). The Consolidated Underwriters case stated the reason for this rule in the following language:

"But it would be useless and impracticable for the title to express all of the provisions of a particular act and the details of each provision. For, in such a case, this introductory matter would amount to a mere repetition of the legislation itself, and would answer no purpose of abbreviated notice. . . ."

In Fry v. Jackson, 264 S.W. 612 (Tex. Civ. App. 1924), the court said that this section of the Constitution "merely requires the subject of the proposed act to be expressed in the title or caption; the details and machinery for effectually aiding the object of the bill need not be expressed." It has also been held that the caption is not deficient because it does not contain a separate statement of purpose for each subdivision within the body of the act. Wilkinson v. Lyon, 207 S.W. 368 (Tex. Civ. App. 1918).

The Constitution provides for the offices of district attorney and county attorney in Article V, entitled

"Judicial Department." These officials are officers of the court, and the authority to establish courts and to prescribe the jurisdiction thereof, which is conferred on the Legislature by Section 1 of Article V of the Constitution, includes the authority to establish a district attorneyship as an adjunct to the organization and functioning of a district court. State v. Johnson, 12 Tex. 231 (1854); Harris County v. Crooker, 112 Tex. 450, 248 S.W. 652 (1923); Jones v. Anderson, 189 S.W.2d 65 (Tex. Civ. App. 1945, error ref.); Neal v. Sheppard, 209 S.W.2d 388 (Tex. Civ. App. 1948, error ref.).

In view of the close relationship between the functions performed by these officers and the functioning of the courts themselves, we are of the opinion that the portion of the caption of House Bill 192 which reads, "prescribing the duties of the court when this is responding state," is sufficient to embrace the duties imposed upon the district and county attorneys. Further, we think the language, "providing the manner in which the duties of support are enforceable," also gives sufficient notice of this provision in the statute. As noted above, the machinery for effectually aiding the object of the bill need not be fully detailed in the caption.

Your brief also raises a question as to whether this provision in House Bill 192 is in conflict with Rule 308-A, Texas Rules of Civil Procedure, as amended effective March 1, 1952, and, if so, whether the statute is thereby rendered ineffective. By the amendment, which was adopted subsequent to the enactment of House Bill 192, Rule 308-A authorizes the court to appoint a member of the bar of his court to represent the claimant in a contempt proceeding for enforcement of a support order. The suggested conflict would arise from this variance in obtaining representation for the obligee.

House Bill 192 makes provision for the enforcement of support orders of the courts of one State through the courts of a different State. Rule 308-A, on the other hand, prescribes a procedure for enforcement by a court of this State, through contempt proceedings, of its own orders for periodical payments for child support. The rule, either as originally adopted or as amended, did not introduce a new remedy; it merely simplified the procedure for enforcing a remedy which already existed.

In Guercia v. Guercia, 239 S.W.2d 169 (Tex. Civ. App. 1951, error ref. n.r.e., 241 S.W.2d 297), the Court

of Civil Appeals intimated that the procedure set out in Rule 308-A, as well as the remedy, was available to a claimant under a foreign judgment. In reviewing the opinion of the Court of Civil Appeals, the Supreme Court held that the remedy of contempt was available under rules of comity and public policy. It did not hold that Rule 308-A provided the exclusive procedure for enforcing the foreign judgment through contempt proceedings, nor did it hold that the procedure under Rule 308-A was applicable at all to a claimant under a foreign judgment.

Even if it were definitely settled that the procedure under Rule 308-A could be employed by an obligee under a support order from another State, we would be inclined to the view that the procedure prescribed in House Bill 192 is complementary to rather than in conflict with Rule 308-A. In the present state of the law, it is our opinion that these enactments operate in different spheres: the rule in the sphere of domestic judgments and the statute in the sphere of foreign judgments. We therefore hold that they are not in conflict. In view of this holding, it becomes unnecessary to consider what effect a conflict would have on the statute.

## SUMMARY

The district clerk is authorized to require security for costs in suits filed under the Uniform Reciprocal Enforcement of Support Act wherein Texas is the responding State. Arts. 2328b-1 to 2328b-3, V.C.S.

The district attorney or county attorney is required to represent the obligee in a support proceeding filed in a district court of Texas under Art. 2328b-3 wherein Texas is the responding State.

APPROVED:

J. C. Davis, Jr.
County Affairs Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

BW:MKW:wb

Yours very truly,

PRICE DANIEL
Attorney General

Burnell Waldrep

Mary K. Wall

Assistants